[L. A. No. 10104.   Department Two.—September 22, 1928.]

SAMUEL D. McINTYRE, et al., Appellants, v. CONSOLI-
    DATED WATER COMPANY (a Corporation) et al.,
    Respondents.

232

Nichols, Cooper & Hickson and A. L. Hickson for Appellants.

Joseph A. Allard, Jr., for Respondents.

TYLER, J., *pro tem.*—█ Plaintiff Samuel D. McIntyre and some sixty-eight others have joined as plaintiffs to obtain an injunction and declaratory relief concerning certain water rights secured to them by contract. The proceeding is brought under section 1060 et seq. of the Code of Civil Procedure. That section provides, in substance, that any person interested under a deed, will, or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over, or upon property, . . . may bring an action . . . for a

declaration of his rights, including a determination of any question of construction or validity arising under such instrument or contract. The complaint alleges, in substance, that on the fourteenth day of September, 1887, one Fred J. Smith and William Everett entered into a certain written agreement by the terms of which Smith agreed to sell and deliver to Everett, and Everett agreed to purchase, a stream of water of continuous and uniform flow of six thousand five hundred gallons every twenty-four hours. The water so purchased was to be obtained from a well to be bored by Smith upon lands owned by him and delivered through pipes to a subdivision of land owned by Everett. The title to said water, together with a proportionate interest in the well, was to pass to Everett upon payment of the purchase price, which the agreement recites was made. A deed was executed by Smith to the waters and the well in conformity with the terms of the agreement. In and by said deed Smith granted and conveyed to Everett the *quantum* of water mentioned, as developed by artesian wells on lands belonging to Smith described as lot 32 of the Loop and Mcserve Tract, Rancho San Jose, county of Los Angeles, together with a perpetual right of way through the pipe-line system owned by Smith for carrying the water and also a proportionate interest in the artesian wells as the water conveyed bears to the whole amount flowing from the wells through the pipe-line system. At the time of the conveyance Smith owned the water and the lands on which the well was located. The complaint proceeding alleges that Everett subdivided his lands upon which the water was to be delivered and plotted a subdivision and sold and transferred the various lots to different purchasers. That plaintiffs herein were the successors in title to Everett in said lands and to a portion of the waters and pipe-line as conveyed by Smith to Everett. That during the years 1887 and 1888 Smith conveyed to and contracted with various people, other than Everett, different interests in said water to which certain plaintiffs herein have succeeded. That all of the water, water rights, and interest conveyed by Smith as above set forth were conveyed by way of deeds of grant duly recorded and were and still are appurtenant to certain lands in and adjacent to the city of Pomona. About the year 1897 Smith sold to the defendant The Consolidated Water Company the well on said lot 32, together with the

pipe-lines, subject, however, to his former conveyances, all of which were expressly reserved from the operation of the sale. After such sale was made there arose some uncertainty concerning the amounts of water the respective purchasers were entitled to. To obviate any dispute the Consolidated Water Company made and executed a written agreement with the plaintiffs, which agreement is made a part of the complaint. By its terms the water company contracted and agreed to furnish and deliver, by pumping or otherwise, to the respective signatories, plaintiffs herein, from lot 32, or other sources, the quantities of water set opposite their respective names, for the sum of eight cents per thousand gallons. This contract recognizes the ownership of the water rights and privileges of plaintiffs in certain wells and it also attempts to provide how it may be canceled or annulled. In the event of annulment it recites that ''the parties shall be restored to and retain the same rights and privileges held by them regarding said water rights as they had and were entitled to before the agreement was made, and neither party shall be subject to any damages on account of the annulment of this agreement.'' Plaintiffs or their predecessors in title did not by this agreement in any manner release, waive, or transfer to the water company their right, title, and interest in and to the waters, water rights, or pipe-line which they had acquired from their grantor. After the water company had purchased the well and water from Smith, as above narrated, it deepened the well and otherwise improved it. Thereafter, in order to produce a greater supply of water, it drilled another hole immediately adjacent to the old well, using in part the same shafting as had been originally in use, and tapped the same water veins and channels and underground sources of water supply and developed and brought to the surface the same waters, identically, as those which had formerly been produced and brought to the surface by the old well. The well as improved by the water company has been in use continuously by it for the production of water for sale to its consumers and patrons. ■ The complaint then alleges that on October 1, 1926, the city of Pomona purchased from the water company its interest in the water distributing system. It is charged that immediately prior to such sale the water company caused to be served upon plaintiffs a

notice of revocation of its contract above referred to, and after the sale the city of Pomona reaffirmed such revocation and has threatened to cut off the delivery of water under said contract and refuses to furnish water at all times to plaintiffs except upon payment of the rates and under the terms and conditions fixed generally for the delivery of water within the city of Pomona, and at rates much higher than those fixed by the contract. Then follow allegations to the effect that defendants have so altered and changed the distributing system that it is impossible for them to restore to plaintiffs their property and rights under their contract. Plaintiffs also allege that the waters were at all times privately owned and have never been, and are not now, a public utility. The contracts and deed above referred to are annexed to the complaint and made a part thereof. Judgment is prayed (1) for an injunction against defendants raising the rates in violation of its contract; and also (2) for a mandatory injunction that defendants furnish the specified amount of water to each plaintiff at the rate provided for in the contract; and (3) for declaratory and such other relief as may be equitable. To this complaint defendants interposed a demurrer on the ground that it did not state facts sufficient to constitute a cause of action, and also as to certain alleged uncertainties. The trial court sustained the demurrer and plaintiffs refused to amend, electing to stand on their pleading. They here contend that the amended complaint was sufficient against defendants' demurrer and it should have been overruled. In support of the judgment on demurrer respondents claim that appellants are not entitled to any relief under the facts stated in the complaint, for various reasons, and relief was properly denied them. They contend that the contract of March 15, 1900, made by and between plaintiffs and the water company, was and is invalid, as in violation of article XIV of the constitution, as the water company was a public utility at the time the contract was entered into; that it gave a preferential right to waters dedicated to a public use, by increasing a burden upon a public utility. It is further claimed that appellants' rights in and to the waters have been lost by abandonment. Uncertainty as to particular allegations is also claimed. We see no merit in any of those contentions. Plaintiffs acquired their water rights long

prior to the time the water company acquired its interest in the remaining waters of the well from Smith in 1897. The waters so acquired by plaintiffs were and now are appurtenant to their lands. They were never conveyed at any time to the water company or to anyone else, nor were they ever dedicated to public use. On the contrary, the water in question and an interest in the well and distributing system were at all times held in private ownership by plaintiffs. After the sale by Smith to the water company of his interest, in 1897, some uncertainty arose as to the amount of water the respective parties were entitled to. The contract of March 15, 1900, made with the water company, was entered into for the purpose of making certain some of the uncertainties of the prior agreements. Plaintiffs did not acquire their rights under this agreement, the rights which they had formerly acquired being merely confirmed thereby. The agreement itself recognizes plaintiffs' prior rights, for it provides that upon its abrogation the parties shall be restored to and retain the same rights and privileges held by them regarding said water rights as they had and were entitled to before the agreement was made. ■ The mere fact, therefore, that the water company was a public utility at the time the contract was made in no manner affected plaintiffs' rights to their interest in the water and distributing system. Part of water from a single source may be devoted to public service and part retained for private use. (*Allen* v. *Railroad Commission*, 179 Cal. 68 [3 A. L. R. 249, 175 Pac. 466].) But even if it be assumed that the contract is invalid for any reason, such fact in no manner deprives plaintiffs of their property, as in that event they are relegated to their former rights, which consist of an interest in the well and distributing system and certain waters which it is alleged defendant refuses to permit plaintiffs to use.

■ Equally without merit is the further claim that whatever rights plaintiffs may have had in the waters and distributing system have been lost by abandonment. In this connection the claim is made that the well and distributing plant, having been altered so as to become incorporated with the system now owned by the city of Pomona, a public utility, such incorporation being with plaintiffs' knowledge and consent, they have lost their rights therein, as the law will not permit such act to increase the burden of the utility.

The change was brought about by defendants themselves for their own benefit in an endeavor to increase their quantity of water, and they cannot avail themselves of this act to deprive plaintiffs of their property. The law provides a simple and just means by which a public utility may acquire the private property of others.     Then, again, the cost of distributing plaintiffs' waters to their lands was definitely fixed by contract and to raise the rate without their consent would impair the obligation of a contract, and, so far as the increase inured to the benefit of the public use by reason thereof, it would be the taking of private property for public use without compensation. (*Allen* v. *Railroad Commission, supra.*)     The further claim is made by respondents that as the contract was annulled in the manner provided for in the instrument itself plaintiffs are entitled to no relief in consequence of such termination. There is nothing in the complaint to show that the contract was ever annulled in the manner claimed. The pleading merely recites that defendants are refusing to deliver water under the contract. But even in the event of an annulment the parties under the very terms of the contract were to be restored to their former rights, and it is alleged defendants refuse to make such restoration. Plaintiffs have enjoyed the full use of their waters since they were acquired in 1887 down to the time the city of Pomona acquired the interest of the water company in 1926, and they have done nothing during all this period which would in any manner impair or destroy their rights in their property. The complaint in ordinary and concise language sets forth plaintiffs' cause of action and there is no uncertainty in any of its allegations, either in form or substance, and the rights therein asserted are not shown by their pleading to have been relinquished or lost as claimed by defendants. The demurrer to the complaint should have been overruled.

The judgment is reversed.

Richards, J., and Shenk, J., concurred.